1836.

Guion
v.
Knapp.

</div>

---

GUION and others *vs.* KNAPP and others.

The principle of charging different parcels of the mortgaged premises which have been sold at different times, subsequent to the mortgage, in the inverse order of their alienation, is not always confined to the original alienations of the mortgagor who is personally liable for the debt. It is equally applicable to several conveyances of separate parcels of the mortgaged premises, made at different times, by his grantee who conveys with warranty.

Where a mortgagee, with notice of several successive alienations of parts of the mortgaged premises, releases that part which is primarily liable in equity for the payment of the mortgage debt, he cannot be permitted to charge other portions of the premises with the payment of the mortgage, without deducting from the amount due the value of the part thus released.

The right of a prior grantee of part of the mortgaged premises to have the different parcels charged in the inverse order of their alienation is an equitable and not a strictly legal right ; and is governed by the same equitable principles upon which a court of chancery protects the rights of sureties. A release by the mortgagee of the land which is primarily chargeable, as

1836.

Guion
v.
Knapp.

April 5.

being the last conveyed, does not therefore discharge his lien upon the part which was previously conveyed, unless he had notice of the previous conveyance at the time of the execution of such release.

THIS was an appeal from a decree of the vice chancellor of the third circuit. The bill was filed to foreclose a mortgage given by Peter Knapp and wife, in November, 1810, upon about 300 acres of land in lot No. 42, in the township of Tully, to secure the payment of $1000 and interest. The mortgage was registered the 4th of March, 1812; previous to which time, the mortgagors had conveyed about 64 acres, off the south end of the mortgaged premises, to John Knapp, which were subsequently released to him by the mortgagees. In December, 1811, the mortgagors also conveyed to Elijah Knapp about 76 acres of the mortgaged premises, with warranty; but the grantee knew of the existence of the mortgage at the time of his conveyance. On the 9th of April, 1812, the mortgagors conveyed about 25 acres of the mortgaged premises to P. Knapp, jun. who afterwards conveyed the same to W. J. Skellie. In March, 1814, the mortgagors conveyed to L. Palmer 103 acres of land, which included about 32 acres of the mortgaged premises. Of this 32 acres, Palmer conveyed $9\frac{36}{100}$ acres to E. Millard, previous to the 6th of January, 1826; under whom the defendant J. W. Raymond afterwards derived title to the same. And of the residue, Palmer, on the 6th of January, 1826, conveyed $16\frac{71}{100}$ acres to the defendant J. Guthrie, and $5\frac{72}{100}$ acres to the defendant A. Snow. The conveyance from Palmer to Snow also included another small piece of the mortgaged premises; but which was embraced in the release of the 64 acres, from the mortgagees to John Knapp. On the 24th of April, 1814, the mortgagors also conveyed to the defendant E. Humphrey 50 acres of land, which included about 6 acres of the mortgaged premises. The mortgagors also conveyed 100 acres of land to Silas Crandall, in October, 1816, which included $15\frac{30}{100}$ acres of the mortgaged premises, and Crandall gave back to Peter Knapp a mortgage to secure $537 of the purchase money. This mortgage was

assigned to Isaac and James D. Knapp, in February, 1822 ; and it was subsequently foreclosed, and the premises were purchased in by F. G. Jewett, in September, 1822, who conveyed the same to Isaac and James D. Knapp. They conveyed to the defendant M. Hillman the north half of the 100 acres, including $7\frac{5}{100}$ acres of the premises embraced in the original mortgage to the Guions. And D. Kellogg afterwards obtained title to the other half of the 100 acres, by a sheriff's sale, upon a judgment against Isaac and James D. Knapp ; which half included $8\frac{31}{100}$ acres of the mortgaged premises ; and the defendant Burdick afterwards contracted with Kellogg for the purchase of the same. In April, 1819, Peter Knapp and wife, the mortgagors, conveyed about 12 acres of the mortgaged premises to J. B. Eggleston ; under whom the defendant W. J. Skellie afterwards obtained title to the same. On the 6th of March, 1820, the mortgagors also conveyed about sixty acres of the mortgaged premises to John Knapp, who conveyed the same to Isaac Knapp in August of the same year. Isaac Knapp conveyed the north two-thirds of the sixty acres to N. Hammond, in August, 1822, and the south one-third thereof to the defendant J. Patterson, in January, 1823, with warranty ; and in August, 1823, the mortgagees released Hammond's 40 acres from the lien of the mortgage. At the time of that release, the lands included therein were worth about $10 per acre. In April, 1820, the mortgagors conveyed the residue of the mortgaged premises, $70\frac{29}{100}$ acres, to Isaac and Silas Knapp ; who afterwards conveyed the same to the defendant M. Hillman. And in June, 1825, the mortgagees released this portion of the premises from the lien of the mortgage ; at which time the land was worth about $12 per acre.

None of the conveyances from Peter Knapp and wife were recorded at the time of the execution of this release, or at the time of the execution of the release to Hammond, in August, 1823, except the deeds to Palmer and to Humphrey, which had been duly recorded before that time. The Guions had actual notice of the conveyance to Crandall ; as his mortgage for the purchase money was assigned

to them, by Peter Knapp, as an additional security for their mortgage debt, at the time of the execution of their release to John Knapp, in March, 1817; but it did not appear that they had any notice of the execution of conveyances of any other portions of the mortgaged premises, by the mortgagors, at the time of the execution of their several releases, except the lands thus released from the lien of the mortgages. Patterson, Skellie, Raymond, Burdick, Hillman, Guthrie and Snow, appeared and answered, and the cause was heard on pleadings and proofs as to them; but Peter Knapp and Elijah Knapp, and the wives of the several parties, who were also made defendants, suffered the bill to be taken as confessed against them.

The vice chancellor decided and decreed that an account should be taken of the amount due on the mortgage, applying towards the payment thereof the value of the land released by the mortgagees, in June, 1825; and if nothing was found to be due on the mortgage after deducting the value of such land at the time of the release, that then the complainant's bill be dismissed, as to all the defendants who had answered, with costs. But if a balance should be found due on the bond and mortgage, after deducting the value of the land thus released in 1825, and two-thirds of the value of the land released to Hammond, in August, 1823, that then Patterson's 20 acres be sold, and the proceeds, or so much thereof as was necessary, be appropriated to pay such balance. If any thing still remained due, that then the remaining third of the value of the land released to Hammond be applied as a satisfaction of what remained due, as far as it would go. And if that was not sufficient to pay the balance, that then the land of the other defendants should be sold, in the inverse order of their alienation by Peter Knapp and wife, the mortgagors. From this decree the complainant appealed.

*J. V. L. Pruyn*, for the appellants.

*M. T. Reynolds*, for the respondents.

THE CHANCELLOR. Assuming, for the present, that the vice chancellor was right in the principle upon which his decree in this case is based, the decree appealed from is erroneous in some of its provisions. The principle of charging different parcels of the mortgaged premises, which have been sold at different times subsequent to the mortgage, in the inverse order of their alienation, is not always confined to the original alienations by the mortgagor who is personally liable for the payment of the debt. The principle is equally applicable to several conveyances at different times, by a grantee of the whole or a part of the mortgaged premises, where he conveys with warranty. Thus, if the mortgage is a lien upon 200 acres of land, and the mortgagor conveys one hundred acres thereof to A., the one hundred acres which remains in the hands of the mortgagor is to be first charged with the payment of the debt, and, if that is not sufficient, the other 100 acres is next to be resorted to. But if A. has subsequently conveyed one half of his 100 acres to B. with warranty, the 50 acres remaining in the hands of A. is, in equity, first chargeable with the payment of the balance of the debt which cannot be raised by a sale of the 100 acres that still belong to the mortgagor or his subsequent grantee, before resort can be had to the 50 acres which A. has conveyed with warranty. And if A. conveys his remaining 50 acres to C., either with or without warranty, that portion of the premises is still liable for the balance of the mortgage debt, and must first be sold, before a resort can be had to the 50 acres previously conveyed with warranty to B. In the language of chancellor Kent, C. sits in the seat of his grantor, and must take the land with all its equitable burdens. (5 *John. Ch. Rep.* 241.)

By the decree which is appealed from in this case, the vice chancellor directs the lands of Patterson to be sold only in case the whole mortgage debt is not satisfied after applying two-thirds of the value of the lands released to Hammond by the mortgagees. But by referring to the exhibits, it will be found that Isaac Knapp was the owner of the whole 60 acres conveyed in March 1820, to John

Knapp, at the time of his conveyance of the north two-thirds thereof to Hammond with warranty, in August, 1822, about five months before he conveyed the south third of the 60 acres to the defendant Patterson. This south 20 acres, therefore, was primarily liable, in the hands of Isaac Knapp, for the payment of the mortgage debt, before a resort could equitably be had to the 40 acres which he had first con-veyed to Hammond. And when Patterson afterwards pur-chased that 20 acres, in January, 1823, he took the land charged with all the equitable burdens which existed against it in the hands of his grantor. These two grantees of Isaac Knapp, therefore, stood in the same relation to each other, in reference to the lien of this mortgage, as if they had de-rived their titles to their respective portions of this 60 acres directly from the original mortgagors of the premises by conveyances of different dates. And as the proceeds of Patterson's 20 acres was the primary fund for the satisfac-tion of the lien of the mortgage on the whole 60 acres, the release to Hammond could not in any way impair the lien of the mortgagees upon that 20 acres. But as Isaac Knapp had also conveyed to Patterson with warranty, and was bound to see that his land was discharged from the lien of the mortgage, the $300 received of him by the mortgagees, as the consideration of the release to Hammond, must be applied upon the mortgage, if it has not already been done, before any resort can be had to the lands of Patterson.

The seventy acres conveyed to Isaac and Silas Knapp, in April, 1820, and released from the lien of the mortgage in June, 1825, was the last parcel of the mortgaged premi-ses which was conveyed by the mortgagors. And it was worth, at the time it was so released, more than sufficient to satisfy the balance then due on the mortgage, at the low-est estimate of its value as fixed by any of the witnesses ; even if the complainant's bill contains a correct statement of all the payments which had been made upon the mort-gage previous to that time. If the complainants, therefore, are chargeable with notice of the equitable rights of the respective grantees, under the previous conveyances of the

several other parcels of the mortgaged premises by Peter Knapp and wife, the bill should be dismissed as to all the defendants who have appeared and answered, with costs. And a reference to compute the amount would in that case be wholly unnecessary, and a useless expense to the parties. On the other hand, if the complainants are not chargeable with either actual or constructive notice of the previous conveyances from the mortgagors, at the time when the release of the 70 acres was executed, the amount actually received by the complainants on the execution of the release should alone be taken into the account in ascertaining what is due upon the mortgage; and if any thing remains still due, the lands of the several defendants, which have not been released, should be charged in the inverse order of their alienation.

The answer of the defendant Burdick contains a distinct allegation, that at the time of the execution of the releases of the 400 acres to Hammond, and of the 70 acres to Hillman, the complainants knew of the conveyance to Crandall, in 1816; and this allegation is sustained by the proof. At the time of the conveyance to Crandall he gave back to Peter Knapp a bond and mortgage upon the same premises, for $467. And from the recitals in the release to John Knapp, executed by the Guions in March, 1817, it appears that such bond and mortgage was actually assigned to them by Peter Knapp, as an additional security for the payment of their debt. This is the same mortgage which was afterwards assigned to Isaac and James D. Knapp, and foreclosed by them; and through which the defendants Burdick and Hillman have derived their title to the two small pieces of the mortgaged premises, now claimed by them respectively. How this bond and mortgage came to be relinquished by the Guions does not appear; but the recital is conclusive to show that they must have known that Peter Knapp had conveyed away this part of the mortgaged premises, previous to 1817. It was also notice to them of the rights of Humphrey and of Palmer, and of the grantees of the latter, as the 100 acres of Crandall is bounded on their lands.

This certainly was sufficient to make it their duty to inquire and ascertain what were the equitable rights of those prior grantees of Peter Knapp, before they undertook to discharge the lands which had been conveyed by him long subsequent to that time, from the lien of their mortgage. And as the deeds to Humphrey and to Palmer were both on record, there could have been no difficulty in ascertaining their rights by an inquiry at the clerk's office. I presume there was no intention, on the part of these mortgagees, to defraud the previous purchasers of their rights; but as these complainants have by their negligence released lands, which were primarily liable for the payment of their mortgage, of nearly double the value of what was due thereon at the time such releases were given, they have no equitable claim to come here for relief against those who in equity were entitled to be exonerated from the lien of the mortgage. The complainants' bill should therefore be dismissed as against the defendants Burdick, Hillman, Humphrey, Raymond, Guthrie and Snow, with costs.

The case is different in respect to the lands claimed by the defendants, Patterson, Skillie and Elijah Knapp. Neither of those defendants, or the grantees under whom they claim, had taken the precaution to have the deeds under which they claimed title recorded; so that it could not be ascertained by a search in the proper office, that Peter Knapp had conveyed the lands claimed by them, previous to the conveyance of the 70 acres to Isaac and Silas Knapp, in April, 1820. And there is no evidence whatever in this case, that the complainants had any notice, either actual or constructive, of their equitable rights, as prior purchasers, at the time the releases to Hammond and to Hillman were applied for and given.

The right to have the lands, which have been sold by the mortgagor, charged in the inverse order of their alienation, is not strictly a legal but an equitable right, and is governed by those equitable principles upon which this court protects the rights of sureties, or those who are standing in the situation of sureties. And the conscience of the party who holds the incumbrance is not affected, unless he is informed

of the existence of the facts upon which this equitable right depends; or he has a sufficient notice of the probable existence of the right to make it his duty to inquire, for the purpose of ascertaining whether such equitable right does in fact exist. If, therefore, the prior purchasers are so negligent as to leave the holder of the incumbrance to deal with the mortgagor, or with a subsequent grantee of a portion of the premises, under the erroneous supposition that the lands conveyed to the prior purchasers still belong to the mortgagor, the mortgagee will not lose his lien by executing a release to one who happens to be a subsequent grantee. The principle that a creditor having a lien on two funds may discharge the lien as to one without impairing his legal claim on the other, if he has no reason to suppose it will interfere with the equitable rights of any one, was distinctly recognized and asserted by Chancellor Kent, in the case of *Cheesebrough* v. *Millard*, (1 *John. Ch. Rep.* 409.) To deprive a creditor of his legal claim against the property of a person standing in the situation of a surety on the ground that such creditor has done an act which is inconsistent with the equitable rights of a surety, not only the fact of suretyship must exist, but it must be known to the creditor at the time of the act complained of. (*Neimcewitz* v. *Gahn*, 3 *Paige's R.* 614. 11 *Wend.* 123, *S. C.*) I do not think there is any thing in this case which will authorize a decree discharging the lands of Patterson, Skillie and E. Knapp from the lien of the mortgage, if any thing is due thereon after crediting the amounts actually received as the consideration for the releases.

The decree of the vice chancellor must therefore be reversed, but without costs to either party on this appeal. And a decree must be entered declaring the lands of Burdick, Hillman, Humphrey, Raymond, Guthrie and Snow, discharged from the lien of the mortgage, and dismissing the bill, as to them, with costs. A reference must also be directed to a master residing in the county of Onondaga, to ascertain and report how much, if any thing, is due upon the bond and mortgage; and, upon the coming in and confirmation of the report, if it shall appear that there was

nothing due on the bond and mortgage at the time of filing the bill, or that the amount then due was not sufficient to sustain the jurisdiction of the court, the bill is to be dismissed with costs as to Patterson and Skellie. But if it shall appear that a sum sufficient to sustain the jurisdiction of the court was due, then the lands of Patterson, Skellie and Elijah Knapp, or so much thereof as may be necessary to pay the amount reported due and interest together with the complainants' costs, exclusive of their costs on this appeal, must be sold in the inverse order of alienation. The usual directions in other respects are to be inserted in the decree.