## Case No. 8,889.

### McLEAN v. LAFAYETTE BANK.

[4 McLean, 430.] [1]

Circuit Court, D. Ohio. July Term, 1848. [2]

BANKRUPTCY—INCUMBRANCES — PRIORITY OF SALE —INCIDENTS OF JUDGMENTS—MORTGAGE— APPLICATION OF SURPLUS.

1. Where a mortgage is given on land and personal property, and other liens are set up to the personal property, the court will direct the real estate to be first sold. But if it should be insufficient to discharge the mortgage, the lien on the personal property will be enforced, it being prior to the others.

[Cited in Foster v. Ames, Case No. 4,965.]

2. When a judgment is appealed from the common pleas to the supreme court, the judgment below remains a lien on the real estate of the defendant, in the county, and it would seem that the accruing interest and costs and penalty ought also to be considered as an incident to that judgment.

3. A mortgagor is not responsible, without notice, for the application of any surplus which may remain on the sale of the mortgaged property, after satisfying his mortgage.

[This was a bill by Nathaniel C. McLean, assignee in bankruptcy of John Mahard, Jr., and William Mahard, partners as John Mahard & Co., to set aside certain transfers of stock of the Lafayette Bank and mortgage of real estate made by the bankrupts and claimed to be fraudulent as to their creditors. An injunction was granted to stay proceedings in the state court seeking to enforce the alleged fraudulent preferences. The case was formerly heard upon motion to dissolve this injunction. Case No. 8,885. Subsequently an amended bill was filed, to which the defendant demurred. The demurrer was overruled. Id. 8,886. Complainant moved for a receiver to take charge of a farm, a part of the property alleged to have been fraudulently transferred. The motion was allowed. Id. 8,887. The case then came up for a determination of the validity of the alleged fraudulent liens and transfers, some of which were held invalid. Id. 8,888. It is now heard upon exceptions to the master's report.]

Mr. Gholson, for plaintiff.
Mr. Chase, for defendant.

OPINION OF THE COURT. From the case of McLean v. Lafayette Bank [Case No. 8,888], it appears that the bank loaned to John Mahard & Co. fifteen thousand dollars, to be paid in three equal annual installments, with interest. A mortgage on real property was given to secure the payment of this loan, on the 7th of December, 1841. About a

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 13 How. (54 U. S.) 151.]

month after the mortgage was given, Mahard transferred forty-nine shares of stock to the bank, as collateral security, for the payment of the first installment of the above loan. On the 13th of April following, Mahard, on the same paper on which the assignment of the stock had been made to the bank, indorsed, "The forty-nine shares of the stock are transferred to John S. Buckingham, for value received." This last transfer was made on the supposition that the real estate would pay the fifteen thousand dollars. But the court held in the above case that the assignment to Buckingham was void under the bankrupt law [of 1841 (5 Stat. 440)]. And they directed the real property to be first sold, under the mortgage, which has been done, and the proceeds do not pay the above loan. And the question now is, whether the transfer of the stock to the bank, remains a lien to pay the first installment.

The court, on the principle that the bank held two liens, directed the real estate to be sold first, and applied to the discharge of the fifteen thousand dollars loan. But this did not affect the lien of the stock, and was not intended to affect it, if the real estate should prove insufficient to pay the above loan. In their opinion in the original case, the court say, "The final disposition of this stock is reserved until the proceeds of the mortgage shall be realized." And in the concluding part of their opinion, they say, "The transfer by Mahard, of the forty-nine shares of the stock of the Lafayette Bank, having been made to John S. Buckingham, on the 13th of April, 1842, but little more than one month before the petition in bankruptcy was filed, and under a knowledge of the above facts, must be held as void under the bankrupt act." As the transfer of this stock to the Buckinghams was declared to be void, under the bankrupt law, by the court, the stock must be considered as held under the valid transfer, preceding that to Buckingham, to the Lafayette Bank. This stock was intended to secure, to the extent of its value, the first installment of the fifteen thousand dollars loan, and the court will now direct that it shall be so applied.

Exceptions are taken to the report of the master by the Lafayette Bank, as to the judgment of the Bank of the United States, and as to interest allowed on the Franklin Bank debt:

1. That the original judgment of the Bank of the United States, was recovered July, 1841, for $2,728.63, from which an appeal was taken to the supreme court, when the bank recovered a second judgment, 4th April, 1842, for $2,837.84 damages, and $141.89 penalty and costs of supreme court. And it is contended that the judgment for the penalty can only operate from the date of its rendition. The penalty was imposed under a statute by the supreme court, and can not be considered as a part of the judgment of the common pleas, as the amount

could not be known to that court, nor to any one before the judgment of the supreme court. That an appeal bond was given which would secure the penalty and costs in the supreme court. And this penalty and costs in the supreme court, it is argued, can not constitute a lien as a part of the judgment of the common pleas. This is a small point to be brought up at this stage of the proceedings, in a case which involves numerous and intricate question of lien covering a large estate. There is, undoubtedly, plausibility in the grounds taken, and it is not stated the supreme court of the state has ever decided the question. It could only arise where liens had intervened after the rendition of the judgment in the common pleas, and before the judgment in the supreme court. That happens to be the case in the present instance. And the counsel contends that the addition to the judgment, by adding the penalty and costs in the supreme court, should not attach to the original judgment which constitutes a lien, but should be thrown upon the securities on the appeal bond. There seems to be no reason why the accumulating interest should not be included in the judgment of the supreme court as an incident of the judgment below; and the costs of the supreme court and the penalty which it annexes are a consequence of the appeal. As such sums must generally if not uniformly, be small, it is presumed they have been considered as partaking of the character of the first judgment. As against the defendant there can be no objection, and as against the opposing lien holders, I suppose that such has been the course. It may not have been considered of sufficient importance to make the question before the supreme court, and I do not feel disposed in the present case, under the circumstances, to allow the exception; it is, therefore, overruled.

2d exception: Can interest be allowed on a debt of the mortgager to the mortgagee after the mortgagee has purchased, at judicial sale, the property mortgaged to an amount sufficient to satisfy the debt? If the purchase money does not equal the debt, must not the interest stop on the amount of it, whatever it may be? So soon as the sale shall be confirmed and the purchaser has a legal right to enter into the possession of the property, the interest on the mortgage money must cease, because the amount bid is payment. But when sales are ordered by a court sitting in chancery or bankruptcy, the mere sale is not a title until it shall be confirmed by the court, and a title ordered to be made. For until that time, the bidder at the sale is not considered the owner of the property. The counsel for the Franklin Bank, however, admits the above exception, and, of course, it must so stand.

3d exception: The counsel for the Lafayette Bank claims that the Franklin Bank must pay a pro rata proportion of the amount of the judgment of the Bank of the United States, except the penalty and interest. The facts on which this position is founded are: The judgment of the bank was rendered July term, 1841. The mortgage of the Franklin Bank on lots 404 and 460 was recorded October 18th, 1841. The mortgage of the Lafayette Bank on the country property January 13th, 1842. And the judgment on the appeal was entered April term, 1842. On the 8th of March, 1842, the Franklin Bank assented to the sale of Mahard to Dyer, released to him all her interest in the part sold; and agreed with him to indemnify him against the judgment of the United States Bank. Of the price paid by Dyer, $10,000, the Franklin Bank received $7,297.33, the balance, $2,702.67, was paid to the Buckinghams with the assent of the Franklin Bank. The Buckinghams had, according to the adjudications made in this case, no valid liens on any of the property: as all the incumbrance of their judgments was prior to that of the Lafayette Bank, and that of their mortgage on lots 404 and 460 junior to that of the Franklin Bank.

And it is contended, that this being the state of facts, prior to the mortgage to the Franklin Bank, that corporation acquired, as against Mahard and the Bank of the United States, a right in equity, to compel the latter institution to resort to lands then unincumbered, for the satisfaction of its judgment; or in case the judgment should be satisfied out of the mortgaged property to have the judgment assigned to it and its lien on the property preserved for its benefit. And when the Lafayette Bank took its mortgage on the country property, it acquired a similar right, as between itself on the one side, and Mahard and the Bank of the United States on the other. And it is contended that the right of the Franklin Bank remained the same after the mortgage was taken by the Lafayette Bank as before. The Franklin Bank has no right to throw the judgment of the Bank of the United States upon the property mortgaged to the Lafayette Bank. Every mortgagee must inquire before taking a security, not only what mortgages and assignments bind the particular parcel proposed to be mortgaged, but also what mortgages bind every other part of the mortgager's estate. And from these premises the counsel concludes that the judgment of the United States Bank should be paid, pro rata, by the whole property which it bound. And he insists that the Franklin Bank, at most, could do no more than throw the Bank of the United States' judgment over on the Lafayette Bank property, so far as is necessary for its own protection. That if the property and other securities was sufficient to pay its own debt and also the Bank of the United States' judgment, it could not by any arrangement, throw that judgment upon the property mortgaged to the Lafayette Bank to favor junior liens. It is admitted that when an individual is about taking a mort-

gage or other security, it is incumbent on him to ascertain whether there are not other and paramount liens on the same property. And if in this respect he shall be negligent, he must suffer the consequent loss. But it is apprehended that the principle contended for is not the one just stated. It is not the acquisition of a lien, but an abandonment of one. The complaint against the Franklin Bank is, that it was content to receive a part of the consideration for which one of the lots mortgaged to it sold, and consented that the residue of the purchase money should be otherwise appropriated; and the question is, whether by so doing it rendered itself liable to account for the whole amount of the consideration for which the lot sold.

The general principles of equity argued by the counsel, may be admitted, and yet, it is supposed, they can not apply to the case before us. The same argument was pressed upon the court in the original case; and the court then said: "Those general principles must be admitted, but they can only apply where notice was given to the first mortgagee of the subsequent liens, as in case of a mortgage to secure future advances: and there is no proof of actual notice in this case. The bank in its answer denies notice, and constructive notice from the recording of the subsequent mortgages is insufficient. It appears that the balance of the consideration was paid to the Buckinghams, who were subsequent mortgagees. Guion v. Knapp, 6 Paige, 35; Nelson's Heirs v. Boyce, 7 J. J. Marsh. 401; Sharras v. Craig, 2 Pet. Cond. R. 411." The reason of this rule is apparent. The Franklin Bank looks to the property covered by its mortgage for payment, and that being received, not knowing that there are junior mortgagees whose rights may be affected, is indifferent as to the appropriation of the surplus. A notice, then, which puts the party on his guard, is essential to make him responsible; and of so much importance is this notice, that it must be actually given, and not by the recording of a mortgage which determines the lien.

The above exceptions are overruled.

[NOTE. The decree entered in this case was affirmed upon appeal to the supreme court. Mr. Justice Curtis delivered the opinion of the court. 13 How. (54 U. S.) 151.]