The Chancellor.
There are two important questions involved in this controversy.
First. Is the conveyance to Thomas Cook void and of no effect as against the mortgage executed by John L, Ward to the complainants ?
Second. If that conveyance is not void as against the mortgage, must Daniel Crane’s mortgage of $2000 be postponed in payment to the Sarah Ward mortgage assigned to the complainants, to an amount the value of the premises which Daniel Crane released from his mortgage ?
As to the first question. Thomas Cook’s deed bears date, and was acknowledged, prior to the date and acknowledgment of the complainant’s mortgage, but was not recorded until more than six weeks after the mortgage was placed on record. .By the record, then, the deed, as declared by the statute, is void and of no effect as against the mortgage. But the defendants insist that the complainants had notice of the conveyance to Cook at the time of the execution of their mortgage, and this is the controverted point between the parties. To establish this fact, the defendants rely upon the testimony of John L. Ward. He is the only witness that testifies upon this point. He is a defendant in the suit, and was examined under an order of the court, subject to any exception that might be taken at the hearing.
The complainants interpose the objection to his evidence, that he is not a competent witness, on account of interest.
In looking into the competency of this witness, it is proper to remark, that there is no question between the parties as to Cook’s having lost his priority in consequence of any mere neglect on his part to record his deed *122 with proper diligence. When Ward- executed the mortgage to the complainants, the contract between Ward and Cook was not completed. Cook had not the -control of his deed, so as to have it in his power to record it until after the execution of the mortgage. If Ward, when he executed the mortgage to the complainants, did not notify them of the deed he had executed to Cook, he committed a fraud in executing the mortgage, and that fraud operated to the injury of Cook. If he did notify the complainants, then their lien is subject to Cook’s conveyance.
Under these circumstances, is Ward interested in the event of this suit? If the complainants’ mortgage is established as a lien upon the premises embraced in Cook’s deed, then Ward is liable upon his warranty to Cook. But if the complainants are not successful, Ward is not in any way legally.responsible to them. They have got his mortgage, but it is without covenants. It is only as collateral, and to secure any deficiency in the payment of Sarah Ward’s bonds. John L. Ward is not personally liable for any such deficiency. He did not guaranty the bonds. It is thus apparent that it is Ward’s interest to defeat the complainants in this suit, for if they recover, it involves him in a pecuniary loss. My opinion is, there- . fore, that Ward is interested in the event of this suit, and is not a competent witness. I regret this conclusion, because my mind was perfectly satisfied from the evidence • of Cook, corroborated by circumstances confirming his evidence, that the complainants had such notice of Cook’s conveyance, that they should not be permitted to enforce their lien against the premises embraced in his deed. But satisfied, as I am, of Ward’s incompeteney as a witness, I have no option as to the admission of his testimony. However much I may regret the effect in this case, a plain'rule of law compels me to reject the evidence of the witness.
But the counsel of Thomas Cook insisted that the *123 equities existing between those parties are such, that the court ought not to permit the complainants to enforce their mortgage against the property conveyed to Cook; that the consideration money paid by Cook was appropriated to the payment of liens having priority over the complainants’ mortgage, and of which the complainants had notice, and subject to which they took their mortgage ; that the complainant ought not to have the benefit of Cook’s money in paying off prior encumbrances, and be permitted to take the land, also, to pay off their own. The facts proved are not such as to give to the defendant, Cook, the benefit of the argument. It is rather singular that Cook did not frame his answer with a view of deriving the full benefit of this feature of his case, if the facts would sustain him. I have no doubt, from what is before me, that Cook might have put in a defence, and proved it, so as to have secured the full benefit of this argument. But, in his answer, he neither states how he paid the purchase money, nor for what purpose it was appropriated.
Daniel Crane holds a mortgage originally executed to secure the payment of §2000. The consideration of it was for money loaned to Tchabod C. Ward, the father of Thomas L. Ward. At the time of its execution, the title to all the land in question was in Ichabod C. Ward. The complainants admit, in their bill, that they knew of the Crane mortgage, and took their mortgage subject to that encumbrance. The purchase money agreed to be paid by Cook, for the land conveyed to him, was §1108.18. He paid in cash §608.18, and for the balance, §500, he executed his bond to Daniel Crane, and, to secure it, gave a mortgage upon the land. As to this §500, the equities between the parties are very plain. The court would never permit the complainants to foreclose their mortgage under such circumstances, and leave Cook to pay his bond to Crane, and thus allowT the complainants the benefit of that payment. Crane has credited this §500 on his bond and mortgage, and, in consideration of it, he *124 executed a deed of release to Cook. The complainants are not entitled to the benefit of this release. Daniel Crane’s mortgage must stand for its full amount for his own benefit, as well as for the relief of Thomas Cook. This is equitable. The complainants have no right to complain of it, for they took their mortgage subject to the $2000 mortgage. This matter is entirely within the control of the court, and they will adjust the equities between the parties. The complainants claim the land as their own. To compel Cook to pay the purchase money, and then give the complainants the land, would be unjust, and in violation of every principle of equity.
As to the $608.18, the cause was argued upon the assumption that this money was appropriated to pay off the debts of Iehabod C. "Ward, which were a lien upon the mortgaged premises entitled to priority over the complainants’ mortgage. It was insisted that to this amount Cook should be substituted in the place of those creditors. Independent of the consideration, whether the pleadings are so framed as to justify the court in making a decree in conformity with this view, it is sufficient to say, that there is no evidence to show that there were any such debts which were a lien upon the premises. And, besides, it is not shown that the money was appropriated for such purpose. Zenas S. Crane, the only witness who testified touching the payment of the money, says that he counted the money in the presence of Thomas L. Ward and Timothy Ward, the administrator, and that it was paid to one of them. The presumption is, that the money was paid to Thomas L. Ward, and there is no evidence to rebut this presumption. I am of opinion, therefore, that the conveyance to Cook is subject to the complainants’ mortgage; but that the mortgage of Daniel Crane must stand for its full amount, so as .to relievo Cook from the payment of his bond of five hundred dollars, which is held against him by Daniel Crane.
If the view I have taken is correct, then the question *125 as to the effect of Daniel Crane’s release, as between himself and the complainants, is of no moment. But as this question was very fully discussed upon the argument, and the parties may see proper to take the opinion of another court upon the case, it may be more satisfactory that I should give my judgment on this question.
Upon the assumption that Cook’s deed is valid as against the complainants’ mortgage, Daniel Crane’s mortgage covering not only the other lands embraced in the complainants’ mortgage, but the premises conveyed to Cook, it is insisted that, according to the equities existing between these mortgagees, the complainants have a right to throw Crane’s mortgage upon Cook’s land, before Crane can resort for payment to the land which is common to both mortgages; and that Crane, having voluntarily released the land, which was exclusive as to his mortgage, he has thus disturbed the equities existing between the parties, and, as a consequence, must be postponed to the value of the land released.
The general principle is not denied, that if A., as the owner of 100 acres of land, mortgages all of it to B., and subsequently 50 acres of it to C., A. will be compelled, by a court of equity, to resort to the 50 acres not embraced in C’s mortgage before he can have recourse to the land common to both mortgages. This principle of equity is not confined to the original owner and his immediate grantees, but is applicable to all future alienations of the land, as long as it can be applied, without injury or manifest injustice, to any of the parties in interest. It follows, that if any of the parties wrongfully disturb these equities, so as to deprive another of his just rights, it is a wrong which he cannot commit with impunity; and a Court of Chancery will adjust the equities between the parties, whenever it attains jurisdiction so as to enable it to do so. But this is a principle of equity to be applied as each case arises, according to its circumstances, and for the purpose of doing equity between the parties. It is not *126 an inflexible rule of law, whieh a party has a right to ask may be applied without regard to the circumstances of the case or its consequences upon third parties. The court will never put in jeopardy the interest of the first encumbrancer by applying this principle. It will refuse to do so where it can be seen that such will be its effect.
Where a mortgagee has released land primarily liable for his debt, to the prejudice of another mortgagee, who has a lien upon part only of the lands embraced in the first mortgage, the court may prevent the first mortgagee from enforcing his mortgage upon the portion of the lands common to both mortgages until he deducts from his debt the value of the land released. But the mortgagee will not be liable to such consequences, unless he has knowingly and wrongfully prejudiced the rights of the other mortgagee. He must have knowledge of the other mortgagee’s rights. If he releases without notice, he is not to be a sufferer. If the other mortgagee wishes to protect himself, he must give notice of his rights./' The counsel of the complainants insisted that the record furnished him with such notice. But the statute does not make the record notice for any such purpose, nor is it reasonable that it should be notice. If this is so, every mortgagee, before he takes a step to secure his own rights, must resort to a search of the record to ascertain how his ■act will affect the rights and interest of others. I can find no case going to this extent. In Guion and others v. Knapp and others, 6 Paige 43, the Chancellor says, the conscience of the party who holds the encumbrance is not affected, unless he is informed of the existence of the facts upon which this equitable right depends; or he has a sufficient notice of the probable existence of the right to make it his duty to inquire, for the purpose of ascertaining whether such equitable right does in fact exist. If, therefore, the prior purchasers are so negligent as to leave the holder of the encumbrance to deal with the mortgagor, or with a subsequent grantee of a portion of the premises, under *127 the erroneous supposition that the lands conveyed to the prior purchasers still belongs to the mortgagor, the mortgagee will not lose his lien by executing a release to one who happens to be a subsequent grantee. In the case of Cheeseborough v. Millard, 1 J. C. R. 414, where a judgment creditor claimed this equity against a mortgagee who had released, Chancellor Kent says the mortgagees were not bound to search for the judgment, and the record was no constructive notice to them; and as this rule of substitution rests on the basis of mere equity and benevolence, the creditor who has thus disabled himself from making it is not to be injured thereby, provided he acted without knowledge of the other’s rights, and with good faith and just intention, which is all that equity in such case requires.
In the present case, the bill does not charge that Daniel Crane had notice of the complainants’ mortgage. The circumstances attending the transaction in regard to his release were not such as to put any prudent man upon inquiry to ascertain whether there were subsequent encumbrancers, whose rights would be prejudiced by his release. On the contrary, they were such as would reasonably lead him to the conclusion that no one could be prejudicially affected by his act. I do not think that the release should operate, in any manner, to the embarrassment or injury of Daniel Crane’s rights under his mortgage.
Let there be a reference to a master, to take an account of what is due on Daniel Crane’s mortgage, without deducting the $500 bond and mortgage credited as a payment on his bond; and also to take an account of the amount due on the complainants’ mortgage. And let the decree be so drawn as to sell the land conveyed to Cook, .to make up any deficiency after the sale of the other lands embraced in the mortgages.