# SUPREME COURT OF TENNESSEE,

### FOR THE

# EASTERN DIVISION.

KNOXVILLE,........SEPTEMBER TERM, 1881.

7L 341
12L 520
15L 356

### REPS JONES *v.* GEO. MANEY *et al.*

JUDGMENTS. *Sale of land. Application of proceeds.* A debtor owning various pieces of land, subject to the lien of several judgments, conveys part by deed duly registered. Subsequently other judgments are obtained against him. All the judgments are then transferred to the same person, and by process thereon all the lands are levied upon. At the sale, the *unconveyed* lands bring a sum sufficient to satisfy all the "*senior judgments,*" but not sufficient to satisfy all. By the direction of the creditor, part of the money is applied to the "*junior judgments,*" leaving an unsatisfied balance on the "*senior judgments,*" for which the creditor was proceeding to sell the land that had been conveyed. *Held,* that the purchaser of the land was entitled to a perpetual injunction.

### FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

HENDERSON & JOUROLMON for complainant.

WEBB & TAYLOR for defendants.

McFARLAND, J., delivered the opinion of the court.

On the 11th of February, 1871, the complainant and others obtained a judgment in the circuit court of Knox county for upwards of $2,500 against Joseph A. Mabry. On the 21st of March, 1871, Mabry conveyed by deed, with general warranty, to the complainant two lots of land, in or near the city of Knoxville, in part satisfaction of said judgment, the deed being duly registered on the next day. Several judgments for money in favor of other parties had been rendered by the same court against Mabry at former terms, other judgments were also rendered against him at the same term that complainant's judgment was rendered, and still others were rendered at subsequent terms of said court. There were also decrees for money in the chancery court at Knoxville. All of these judgments and decrees, except complainant's judgment and one other, were taken by appeal, or appeal in error, to the supreme court at Knoxville, and were all affirmed at the September term, 1871. On the 9th of March, 1872, the several judgments and decrees were assigned to Geo. Maney and Maria E. Crutcher, part to one and part to the other, but all for the benefit of the Tennessee & Pacific Railroad Company. Within twelve months from the affirmance of said judgments and decrees said parties were proceeding, by virtue of process issued thereon, to sell a

large amount of property of said Mabry, consisting of various separate tracts and lots of land in Knoxville and Knox county, when said Mabry filed his bill and obtained an injunction inhibiting said sales.   This injunction was continued in force until about the 1st of December, 1875, when the same was dissolved, and resort was again had to the process upon the aforesaid judgments and decrees, and by virtue of said process the deputy sheriff had advertised said property for sale on the 27th of April, 1876, including the two lots conveyed to the complainant Jones.    On the day of sale the original bill in this case was filed and an injunction obtained restraining the sale of said two lots.

If the case stood alone upon the allegations of this bill, it is doubtful whether the question so ably argued by counsel, and upon which the merits of the controversy really depend, would be fairly presented; but the cross-bill states the case more fully, and fairly presents the questions discussed.

Without entering into detail in regard to the various judgments and decrees, so as to show which constituted valid liens upon the property in question superior to the title of the complainant, it may be stated in general terms, that part of said judgments are conceded to have constituted a lien upon the two lots conveyed to the complainant superior to his title; as to the others, it is conceded that the complainant's title is perfect   As we understand the record, the process in each case was levied upon all the separate pieces of property.   The answer and cross-bill were

filed after the sale of the other property, which sale, as we have seen, was not enjoined, and they disclose the fact that the sale of the other property, with the advanced bid thereon, realized a large sum,—sufficient to pay off all the judgments which constituted superior liens on complainant's lots, but not sufficient to pay all the judgments. The sales were made of each lot or tract under the process in all the cases. The lands so sold had not been conveyed by Mabry, or if so, they had been conveyed subsequent to the sale to the complainant and the registration of his deed. At all events, the lands thus sold should, in equity, have been sold in satisfaction of said judgments before selling the lots conveyed to the complainant.

The property was purchased for the benefit of the Tennessee & Pacific Railroad Company, the beneficial owner of the judgments, and by direction of Maney, its agent, the net proceeds of the several sales were so credited upon the several *fi. fa.'s* and orders of sale as to leave an unpaid balance on one or more of those judgments, the lien of which on complainant's lots is conceded to be superior to his deed, and to satisfy these balances the cross-bill prays to have complainant's lots sold, and so the chancellor decreed. But it appears that of the proceeds of said sale large sums were, by the direction of Maney, credited on those judgments which were inferior to complainant's title—or, as they have been termed in argument, the "junior judgments"—paying, it is said, these judgments, or some of them, in full. It seems not to be denied that if the proceeds of the sale had been applied in

Jones *v.* Maney.

accordance with seniority of lien of the several judgments, it would have satisfied in full all that class of judgments which overreach complainant's title, or, as they are termed, the "senior judgments."

The question upon this state of facts is, whether the complainant is entitled to an injunction, or has the defendant the right to satisfaction of the balance of the "senior judgments" out of complainant's lots?

We may treat the question as unaffected by the fact that all the judgments were at the time of the sale, and now are, owned by the same person. We may concede that the assignee may stand with respect to each judgment upon the right of the assignor thereof, and we speak of the several judgments as if still owned by the original parties. It is conceded that if any balance legitimately remains unpaid on the "senior judgments," the complainant cannot resist a sale of his lots in satisfaction thereof. A purchaser of property subject to a lien, has, in equity, the right to have the lien debt discharged out of the debtor's remaining property in exoneration of the property so purchased; or, if his property be taken to satisfy the debt, he may be substituted to the creditor's rights against the debtor and his remaining property. This principle has been applied in various forms, such as the purchase of property subject to a mortgage or vendor's lien. Where there have been successive sales of property so incumbered, the incumbrance, it has been frequently held, shall be enforced against the several parts of the property in the inverse order of the sales. It is not always, however, that courts of equity will in-

terfere with or embarrass a creditor having a clear right to enforce his lien. In some cases the only remedy allowed to the purchaser of the incumbered property, will be to substitute him to the creditor's rights, so as to reimburse him out of the debtor's other property. But the equity and the right to relief, in the one form or the other, is clear.

So, in this case, the complainant had a clear equity to have the "senior judgments" satisfied out of the remaining property of Mabry before selling the lots conveyed to the complainant. If the controversy were alone between the complainant and the holders of the "senior judgments"—that is, assuming that there were no other judgments—the complainant's right to be thus protected, either by compelling the creditor to go upon the other property or by way of substitution, would be beyond doubt. It is, furthermore, not questioned but what the "senior judgments" were a prior lien over the "junior judgments" upon Mabry's remaining property—that is, the other property sold on the 27th of April, 1876, and if the proceeds of that sale had been applied in accordance with such priority, the "senior judgments" would all have been satisfied out of the proceeds of the sale, leaving the deficit upon the "junior judgments," and this would have resulted in the complete exoneration of complainant's lots, as there was no lien thereon in favor of the "junior judgments." This result, however, was prevented by a different application of the proceeds of the sale. This application was made by the officer under the direction of the owner of all the judgments. As between

themselves (speaking of the judgments as if still held by the original holders), they might probably make any application of the money they chose, but they would have no right to do so to the prejudice of any other party interested in the result. The rule as to the application of voluntary payments between parties does not apply.

We have seen that, as between the complainant and the holders of the "senior judgments," equity required their satisfaction out of Mabry's remaining property; as between the "senior" and "junior" judgments, the former had a prior lien upon and right of satisfaction out of said property. This prior lien was fixed and settled by positive statute and settled rules of law. It was the absolute duty of the officer making the sale to appropriate the proceeds accordingly. If the holders of the "senior judgments" chose to waive this fixed legal right in favor of the "junior judgments," they did so at their peril. They ought not thereby to be allowed to prejudice the rights of the complainant, or acquire any greater right to satisfaction out of his property than they would have otherwise had. Equity will consider that done which ought to have been done—that is, we will consider the proceeds of the sale of the 27th of April, 1876, applied as they ought to have been applied. They ought to have been applied according to the prior liens of the several judgments,—this being done, the "senior judgments" are satisfied and complainant's lots exonerated. This must be so, unless the holders of the "junior judgments" have an equity to compel sat-

isfaction of the "senior judgments" out of complainant's lots, so as to leave the other property or its proceeds to them,—upon the principle that where one creditor has resort to two funds and another creditor to only one of those funds, that the latter may compel the former to resort to the fund upon which he alone can go. But this principle does not apply here. The senior judgment creditors cannot be thus compelled to relinquish a *prior lien*, especially when the result is to deprive another party of an equity which is superior to the equity thereby sought to be enforced. This is apparent, for at last the result of what has been done in this case is indirectly to permit the "junior judgments" to be satisfied out of complainant's property, and it is conceded that directly they have no such right. We have ample authority for this conclusion. In the case of *Newton* v. *Nunnelly*, 4 Geo., 356, the proceeds of property sold under two judgments held by the same person, were by his direction applied to the junior judgment, and thereupon motion was made for an *alias fi. fa.* upon the senior judgment, and the motion was refused, although it was not shown that other interests would be thereby affected, it appearing that the money thus misapplied was sufficient to have satisfied the senior judgment. Judge Lumpkin, in delivering the opinion, supposes the very case we have before us, and gives the injustice of the result as a conclusive reason for his decision. The defendant in this case, by buying up the several judgments and applying the proceeds of the debtor's property to the younger judgments, in

violation of the fixed order of priority, will, if sustained, have succeeded in depriving the complainant of property which otherwise ought to be exonerated.

In *Guion* v. *Knapp et al.*, 6 Paige, 35, the mortgagee, with notice of several successive alienations of the mortgaged property, released the part primarily liable. · He was not permitted to charge other portions of the premises with the mortgage debt without deducting the value of the part of the property released. See, also, 2 Paige, 200; 9 Cowen, 403; 5 Johns. Ch. Rep., 33; 8 Paige, 278; 56 Geo., 609.

The decree of the chancellor will be reversed, and a decree rendered for the complainant, with costs.