## DEUSTER vs. McCAMUS and others.

The record of a subsequent mortgage is not constructive notice to a prior mortgagee.

Where a prior mortgagee who has *actual* notice of a subsequent mortgage upon a portion of the same land, releases that portion upon which he has an exclusive lien, the same being of sufficient value to secure his whole claim, the court, in applying the proceeds of a foreclosure sale of the remainder of the land, will give preference to the claim of the second mortgagee.

The court will not allow the first mortagee in such a case to defeat the equitable rights which a subsequent mortgagee defendant would otherwise have, by setting up the equities of the holder of an intervening mortgage on part of the land, embraced i n the first mortgage, who is not a party to the suit.

Where a mortgagee, after actual notice of the *absolute sale* of a portion of the mortgaged premises by the mortgagor, releases other portions thereof sufficient to secure his whole claim, such release discharges the lien of his mortgage upon the portion sold. Per PAINE, J., *arguendo*.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to foreclose a mortgage, executed on the 27th of November, 1854, by the defendant *Bodden* to one Cramer, to secure the payment of $3,500. The mortgage covered originally the west half of a quarter section of land. On the 3d of January, 1856, Cramer released the south twenty acres of the tract. On the 1st of November, 1858, he released the south forty acres of the sixty then bound by the mortgage, and on the same day assigned the mortgage to the plaintiff, there being then due and unpaid thereon $427, which with interest from that day remained unpaid at the time of the commencement of this action. *McCamus*, who was made defendant as a subsequent incumbrancer, answer-

ed.   The nature of his defense is stated in the opinion of the court.

On the trial, the following among other facts were admitted: On the 5th of January, 1856, *Bodden* mortgaged the south twenty acres of the tract to one Peters, to secure the payment of $500.   On the 15th of September, 1856, he mortgaged the whole eighty to R. P. & G. G. Houghton, to secure the payment of $4,885.75.   On the 9th of September, 1857, the Houghtons discharged the north twenty acres of said tract from the lien of their mortgage.   At the same time *Bodden* mortgaged the twenty acres so released to Van Valkenberg & Co.   On the 15th of June, 1858, *McCamus* brought suit to foreclose the Van Valkenberg mortgage, which had been assigned to him, and on the 28th of September following obtained a decree of foreclosure and sale, the amount adjudged to be due him being $1,928.76.   On the 14th of December, 1858, the premises were sold under the decree for $2,000, *McCamus* being the purchaser.   On the 15th of March, 1860, Richard Houghton, assignee of the Houghton mortgage, obtained judgment of foreclosure and sale of the south sixty acres of said eighty acre tract, to pay the sum of $1761.03.

The circuit court found as facts, among other things, that the release by the Houghtons, of the north twenty acres, from the lien of their mortgage, on the 9th of September, 1857, was made at the request of Van Valkenberg & Co.; that the release of forty acres from the Cramer mortgage, dated November 1, 1858, was duly recorded on the next day; that the assignment of the Cramer mortgage to the plaintiff was recorded on the 13th of November, 1858; and that the lands in question were worth on the 1st of November, 1858, not less than $130 per acre.

The circuit court decided that the forty acres released by Cramer, November 1st, 1858, were primarily liable for the payment of the amount due on his mortgage; that said mortgage was discharged by such release; and that the complaint must be dismissed, unless the plaintiff should redeem of the defendant *McCamus*.   The record further states: " It being suggested to the court that the plaintiff declines so to

redeem, it is ordered that judgment be entered that the complaint be dismissed." Judgment accordingly.

*Von Deutsch & Winkler*, for appellant:

Where a mortgagor sells or mortgages distinct parcels of the mortgaged premises to different grantees at different times, the parcels so conveyed become liable for the payment of the mortgage debt in the inverse order of their alienation. *Schryver vs. Teller*, 9 Paige, 173 ; *Skeel vs. Spraker*, 8 id., 182 ; *Patty vs. Pease*, id., 277 ; *Clowes vs. Dickenson*, 5 Johns. Ch. R., 241 ; 1 Hilliard on Mort., 237 et seq. The north twenty acres of *Bodden's* eighty were therefore primarily liable for the amount due on the Cramer mortgage, since the forty acres released had been mortgaged to the Houghtons nearly a year before the mortgage to the respondent's assignors. It cannot be said that because Houghton is not here, his equities are not to be considered by this court. The respondent claims that other lands than those we charge ought to have been made to pay our debt. To determine this issue it is necessary to consider the relative condition of these lands, and to examine the order in which they were conveyed; and for this purpose the court must look at all the conveyances made. 2. If the whole sixty acres were equally bound, then the mortgagee might release portions of the premises at his pleasure. *Holman vs. Bank*, 12 Ala., 369. At any rate the appellant would in such case be entitled to recover the portion properly chargeable to the north twenty acres.

*Finches, Lynde & Miller*, contra:

Cramer had released from his mortgage the land primarily liable for the payment of the debt. The land thus released was of value more than sufficient to pay the amount due on the mortgage held by *McCamus*. These facts would have constituted a defense had Cramer himself foreclosed the mortgage; and the appellant stands in no better situation than Cramer.

It is a doctrine well established that when land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its due proportion; and equity will preserve this equality by compelling the owner of each

part to a just contribution.  *Guion vs. Knapp*, 6 Paige, 42 ;
*Stuyvesant vs. Hone*, 1 Sandf. Ch., 419 ; *Stevens vs. Cooper*, 1
Johns. Ch. R., 425 ; *Cheeseborough vs. Millard*, id., 414 ;
*Parkman vs. Welch*, 19 Pick., 231 ; *Patty vs. Pease*, 8 Paige,
277 ; *Neimcewicz vs. Gahn*, 3 Paige, 615 ; *Same Case*, on ap-
peal, 11 Wend., 312 ; *Howard Ins. Co. vs. Halsey*, 4 Sandf.
(S. C.), 566.

November 2.    *By the Court*, PAINE, J.   We may say at the outset of
this case, that we do not think any equitable rights which
might be claimed by Houghton & Co., growing out of their
mortgage on a portion of the lands in controversy, can be
set up by this plaintiff to defeat any equitable rights which
the defendant would otherwise have.  Houghton & Co. are
not parties to this suit, and their equities cannot be adjusted
here.   It cannot be assumed, in their absence, that they will
ever have occasion to assert the equities which the plaintiff
here seeks to set up for them ; and if they do, they must do
it for their own benefit.   It cannot be used by the plaintiff,
in a proceeding to which they are not parties, for his own
benefit merely, to defeat an equity which the defendant
would have against him.

This, then, would leave the case as follows : Cramer held
a mortgage, which was an existing incumbrance on a tract
of sixty acres.   Van Valkenberg & Co. held a subsequent
mortgage on the north twenty acres of the same tract.   There
was about $400 due on the Cramer mortgage ; and *Bodden*,
the mortgagor, wishing to pay Cramer, obtained the money
of *Deuster*, the plaintiff, paid it to Cramer, and had the mort-
gage assigned by Cramer to the plaintiff as his security for the
loan.   At the same time he procured Cramer to release the
south forty acres, *Deuster* being willing to take the mortgage
after such release, it being then an incumbrance only on the
north twenty, the same covered by the Van Valkenberg mort-
gage.   *Deuster* has now brought this suit to enforce the collec-
tion of the amount due on the Cramer mortgage, out of the
north twenty acres ; and the defendant, who was a purchaser at
a foreclosure sale under the Van Valkenberg mortgage, sets
up the foregoing facts as a defense, claiming that the effect

of the release of the south forty by Cramer—that being of greater value than the amount due on his mortgage—was to extinguish its lien on the north twenty, to which alone the owners of the subsequent incumbrance could resort to secure their debt.

It is well settled that equity will not permit a prior mortgagee, knowing that portions of the mortgaged premises have been subsequently conveyed or incumbered by the mortgagor, to deal with him arbitrarily, to the prejudice of the interests of such subsequent incumbrancers or purchasers, by releasing those parts of the land on which he has the only lien, and attempting to enforce his entire claim out of those portions in which such others had become interested. The following cases establish this proposition: *Stevens vs. Cooper*, 1 Johnson's Ch. R., 425 ; *Guion vs. Knapp*, 6 Paige, 35 ; *Patty vs. Pease et al.*, 8 id., 277 ; *Parkman vs. Welch*, 19 Pick., 231. The principle which, it would seem, is to be extracted from these decisions, is, that such effect should be given to any such acts on the part of a prior mortgagee, as natural justice and the due protection of subsequent parties in interest require to be given. If these require that the lien of his mortgage upon those parts in which they are interested, should be held to be extinguished, then it will be so held. If they can be protected without that, then he may still enforce his mortgage against the remaining portions of the land, so far as he can be allowed to do so consistently with their protection.

In the case of an absolute purchaser from the mortgagor, if the mortgagee, knowing of such purchase, should release to the mortgagor a portion of the land the title to which still remained in him, of greater value than the amount due on the mortgage, then the lien of the mortgage should be held to be absolutely extinguished upon that part owned by such subsequent purchaser; because his purchase being absolute, he would have an equitable right to hold his land without its being sold at all, if the balance was sufficient to pay the debt. And the mortgagee ought not to be allowed to defeat that right. Such was the case of *Guion vs. Knapp*, before cited.

June Term,
1861.

DEUSTER
v.
McCamus et al.

But where the person subsequently interested was interested only as a subsequent mortgagee, it would seem that the same conclusion ought not to follow. In such case, even though the prior mortgagee should release all that portion of the land not covered by the second mortgage, the second mortgagee would have no right to insist that the lien of the first mortgage should be held to be extinguished as to that portion covered by the second, provided such portion was sufficient to pay them both or more than enough to pay the second. The only interest which such subsequent mortgagee has being a security for his debt, he is fully protected when he is allowed to be first satisfied out of the proceeds of that part of the land covered by his mortgage. Beyond that he has no right to insist that the first mortgagee may not deal with the mortgagor in any way he pleases. And this doctrine would have been applicable to this case. For at the time of the release by Cramer of the south forty acres, the interest of Van Valkenberg & Co. in the north twenty was merely that of subsequent mortgagees. The effect of the release, therefore, would have been to give them a priority over the Cramer mortgage, that being all that would have been necessary for their complete protection. And this was substantially the decision of the court below; or he allowed the plaintiff to redeem from the prior mortgage sale, and dismissed the complaint on his refusal to do so. We should be prepared, therefore, to affirm the judgment, except for one reason. We find no proof that Cramer, at the time of the release of the south forty acres, had any knowledge of the existence of the Van Valkenberg mortgage on the north twenty. It is true that mortgage was recorded, but the authorities cited by the counsel for the respondent seem to sustain the position, that the record of a subsequent mortgage is no notice to a prior mortgagee, so as to bind him by the equities of such subsequent mortgagee. To bind him he must have actual notice, or sufficient to put him on inquiry. The record is notice merely to *subsequent* purchasers or incumbrancers, and is not constructive notice to a *prior* mortgagee. This point is quite fully discussed in *Stuyvesant vs. Hone et al.*, 1 Sandf. Ch. R.. 419; and the

conclusions of the assistant vice chancellor as to the result of the authorities, seem to us to be well founded. For this reason, therefore, that there is no allegation or proof that Cramer had any notice of the equities growing out of the Van Valkenberg mortgage, we are compelled to reverse the decision of the circuit court, and direct a judgment of foreclosure and sale to be entered in favor of the plaintiff. For the plaintiff stands in Cramer's place. If Cramer could enforce the mortgage against the remainder of the land, his assignee may do the same.

The proof entirely failed to establish the allegation as to fraud, conspiracy and want of consideration.

The judgment is reversed, with costs, and the cause remanded, with directions to enter judgment in accordance with this opinion.