# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—NOVEMBER TERM, 1881.

SAMUEL T. ALEXANDER ET AL.

v.

WILLIAM P. WELCH.

1. MORTGAGE—FORECLOSURE—INVERSE ORDER OF ALIENATION.—
When a mortgagor has made successive sales of distinct parcels of the mort-
gaged premises to different parties, and the mortgagee brings a bill to fore-
close, he will be required to sell in the first place, such parts, if any, as the
mortgagor still retains, and then the parts that have been sold, selling in the
inverse order of their alienation.

2. MORTGAGEE CAN NOT RELEASE OTHER SECURITY—EFFECT OF RE-
LEASE UPON SUBSEQUENT INCUMBRANCES.—If the mortgage embraces both
land and personal property, or if the first mortgagee has additional security
on personal property, and releases the same, or by his negligence loses it,
with knowledge of a subsequent incumbrance or mortgage of the land, the
subsequent incumbrancer may compel him, on foreclosure, to deduct from his
mortgage debt the value of the security released or lost.

3. MORTGAGEE MUST HAVE NOTICE OF SUBSEQUENT INCUMBRANCE.—
To affect the rights of the mortgagee in this respect, he must have actual or
constructive notice of such subsequent incumbrance.

4. WHAT WILL AMOUNT TO NOTICE.—A first mortgagee is not bound,
before foreclosure, to search the records for subsequent incumbrances; but if,
after receiving the mortgage, he takes a deed or mortgage on a part of the
same property described in the first mortgage, he is driven to the record, and
is bound by the notice which the record affords at that time.

(181)

APPEAL from the Circuit Court of McDonough county; the Hon. S. P. SHOPE, Judge, presiding. Opinion filed January 17, 1882.

Mr. JOSEPH B. MCCONNELL, for appellants; that where a mortgagee takes a new mortgage to secure the prior debt and subsequent indebtedness, he will, as to intervening incumbrancers, be held to have waived the first mortgage, cited Campbell v. Carter, 14 Ill. 286; Jarnagan v. Gaines, 84 Ill. 203; Gardner v. Emerson, 40 Ill. 296; Edgerton v. Young, 43 Ill. 464; Richardson v. Hockenhall, 85 Ill. 124; Fitts v. Davis, 42 Ill. 391.

Where a mortgagee, having additional security upon personal property, releases the same, he will, on foreclosure, be compelled by subsequent incumbrancers to deduct the value of such property from his mortgage debt: Iglehart v. Crane, 42 Ill. 261; Moody v. Haselden, 1 S. C. 129; Red Bank Ass'n v. Patterson, 27 N. J. Eq. 223; Washington Bldg. Ass'n v. Beaghen, 27 N. J. Eq. 98.

Mr. C. F. WHEAT, for appellee.

HIGBEE, P. J. On the 29th day of January, 1877, Joseph V. Sorter, to secure his note of that date to appellee for $715, payable in two years, with ten per cent. interest per annum from date, executed and delivered to appellee a mortgage on certain lots in Blandinville and Bushnell, and at the same time, as a further security for the payment of said note, gave a chattel mortgage on the furniture in the Bushnell House, containing this recital: " This mortgage being given as additional security for payment of said note, partially secured on real estate." On March 27, 1877, appellants, Alexander and Haines, held the note of said Sorter for $1,152, payable in three years, with ten per cent. interest, and to secure the same, said Sorter executed and delivered to them a mortgage, which was recorded on that day, on all the lots in Bushnell included in the former mortgage.

On the 30th day of January, 1877, Joseph V. Sorter was indebted to West, Kaiser & Co. in the sum of $600, and to

secure the same executed his three notes, with appellee and Thomas I. Sorter as his sureties, to West, Kaiser & Co. for $200 each, payable three, six and nine months after date with ten per cent. interest.

On the first day of May, 1877, appellee paid the first of said notes and surrendered it up to Joseph V. Sorter, the principal debtor, who at the same time executed to him his note for $200, payable one day after date with ten per cent. interest.

On the 11th day of December, 1877, by a mortgage of that date, Joseph V. Sorter again conveyed to appellee all the real estate in Blandinville and Bushnell described in the first mortgage, and by a chattel mortgage of that date the same personal property described in the first chattel mortgage to secure to the note for $715, described in the mortgage of the 29th of January, 1877, and also to secure to appellee the said note for $200 of the 1st of May, 1877, and to indemnify him against loss as security for said Joseph V. Sorter on said two notes of $200 each, given to West, Kaiser & Co.

Appellee paid the two notes last named on the 24th day of January, 1879, amounting in principal and interest to $440.

By virtue of the two chattel mortgages, appellee on the 17th day of February, 1879, sold all the personal property therein described, and realized therefor over and above expenses the sum of $580, which he applied on the security debt paid by him for Sorter, secured by the last mortgages, leaving still due him on said last named demand, $98. The court found the facts as above stated, and that the whole of the $715 and interest thereon, secured by the first mortgage, and the balance of $98, secured by the second mortgage, amounting in all with interest to $1,152.82, was still due complainant, and that the same was a first and prior lien on all said mortgaged estate, and that the amount due Alexander and Haines on their mortgage was $1,557.12. The decree ordered Sorter to pay the several sums found due on each of said mortgages, and in default thereof that the master in chancery sell the mortgaged premises, first selling the lots in Blandinville, and out of the proceeds of such sale he pay first, the costs of suit; second, the balance of $98, security debt due complainant on the second

mortgages, and all taxes advanced by complainant, with inter-est; third, the amount due on the first mortgage and taxes advanced by complainant thereon, and bring the balance, if any, into court; that if the amount realized from the sale of the Blandinville property shall be insufficient to pay the several amounts as herein directed, that said master pay the balance out of the proceeds of the sale of the Bushnell property, and if anything remains, that it be applied to the payment of the amount found due Alexander and Haines. But that no part of the funds arising from the sale of the Bushnell property should be applied to the payment of complainant's second mortgages until after Alexander and Haines were fully paid. From this decree Alexander and Haines appeal to this court and insist that the court erred in not requiring the proceeds of the sale of the personal property and the Blandinville lots to be applied in payment of the note for $715 secured by the mortgages of the 29th of January, 1877. Other mortgagees were made parties below, but they claim, under separate conveyances, different parts of the mortgaged premises; and as their rights are not joint with appellants, but several, they do not join in the appeal in this case, and it will not be necessary to notice them further.

It is familiar law and well settled by the great weight of authority, that where a mortgagor has made successive sales of distinct parcels of the mortgaged premises to different parties, and the mortgagee brings a bill to foreclose, he will be required to sell, in the first place, such parts, if any, as the mortgagor still retains, and then the parts that have been sold by the mortgagor, beginning with the last, and selling in the inverse order of their alienation.

This order of equities proceeds upon the supposition that each subsequent purchaser has actual or constructive notice by the recording of the deed or otherwise, of each prior conveyance by the mortgagor of portions of the premises. Jones on Mortgages, Sec. 1092 and 1620, and the authorities there cited.

Mr. Justice Lawrence in Iglehart et al. v. Crane et al. 42 Ill. 261, in speaking of this rule said: "The equity of this

rule is apparent on the plain ground that a man's own property should be first applied to the payment of his own debts, and when a court of chancery requires a mortgagee first to exhaust that part of the mortgaged property still held by the mortgagor, it is only another application of the principle so long and so firmly settled by courts of equity, that where there are two creditors standing in equal equity, one of whom has security upon two funds and the other upon only one of the two, the former is required to proceed primarily against the fund upon which the latter has no claim.

" The justice of first subjecting to the payment of the mortgage, so much of the mortgaged property as may still remain in the hands of the mortgagor, can not be denied, and is admitted by the counsel for the appellees. If, then, this species of equitable lien has attached in favor of a purchaser of a part of the mortgaged premises against the residue in the hands of the mortgagor, how is this residue to be considered as discharged from the lien, merely by a sale and conveyance of it to a third person, taking with notice of all the facts? The purchaser with notice, simply steps into the shoes of the mortgagor; he can claim no equity which would displace that of the prior grantee of the other portion of the mortgaged premises, because, having voluntarily and knowingly become the purchaser, he can not by such act, and at his own mere volition, displace or impair the equity of another. This is the ground upon which rests the rule, that mortgaged premises are to be subjected to the lien in the inverse order of their alienation, where the subsequent purchasers have bought with notice, and as already remarked, in our opinion, the rule has a most persuasive equity."

This rule is equally applicable to successive mortgages of separate tracts of the mortgaged premises. Jones on Mortgages, §§ 724, 1086; Dodds v. Snyder, 44 Ill. 53; and if the mortgagee knows that portions of the mortgaged premises have been subsequently conveyed or incumbered, he is not allowed in equity to release those parts on which he has the only security and to enforce his entire claim upon those portions in which others have become interested; and if he does

release a part which is liable to the payment of his debt only, he can not charge the other portions of it without deducting the value of the part released. George v. Woods, 9 Allen, 80; Gaskill v. Levi, 13 N. J. Eq. 400; Guion v. Knapp, 6 Paige 35; Duester v. McCamus, 14 Wis. 307; Taylor v. Morris, 5 Rawl. 51; James v. Brown, 11 Mich. 25.

If the mortgage embraces both land and personal property, or if the first mortgagee have additional security on personal property or pledge of stocks, and release the same, or by his negligence loses it, with knowledge of a subsequent conveyance or mortgage of the land, the subsequent purchaser or mortgagee may compel him, on foreclosure, to deduct from his mortgage debt the value of the security released or lost, so that the mortgage can be foreclosed only for the balance. Jones on Mortgages, §§ 728, 1628–9, 1631; Moody on Haselden, 1 S. C. 129; Washington Building and Loan Association v. Beagen et al., 27 N. T. Eq. 98; Red Bank M. B. L. Association v. Patterson et al., 27 N. T. Eq. 223.

To affect the rights of the mortgagee in this respect and oblige him to foreclose with reference to the subsequent order of alienation or encumbrances, he must have actual or constructive notice of them. So long as he claims under his first mortgage only, the record of subsequent conveyances is not constructive notice to him. He is not bound to search the record from time to time for other incumbrances; only subsequent purchases and incumbrances are charged with notice by the statute. But when the mortgagee, or a third person, afterward takes a deed or mortgage on a part of the same property described in the first mortgage, he is driven to the record, and is as to such conveyance a subsequent purchaser or incumbrancer, and is bound by the notice which the record affords at that time.

The Supreme Court of New Hampshire in Brown v. Simons, 44 N. H. 475, in speaking of the subsequent purchaser, say: " In the examination of the title to the part he proposes to buy, he is led directly to the original mortgage, and he finds that his is but part of an entire tract in which his grantor has only a right of redemption, and which was originally subject

Alexander v. Welch.

to a common burden, but liable to be affected by a prior sale of another part of the entire tract.  Under such circumstances the different parcels of the tract mortgaged can not be consid_ered as separate and distinct, so as to relieve him of the duty of inquiring into the title to the other part; but we think that in examining the title to the part he proposes to buy, he is led directly to a deed that puts him on inquiry as to the remaining part of the land."  And this language is quoted and approved by the Supreme Court of this State in Iglehart v. Crane et al., *supra.*

When on the 11th day of December, 1877, Welch took from his debtor a new mortgage on the real estate described in the first, and another chattel mortgage on the personal property in the Bushnell House, to secure not only the original but an additional debt, the registry laws charged him with notice of all prior conveyances or incumbrances of record; that record informed him that the mortgaged property in Bushnell had again been mortgaged by Joseph V. Sorter to appellants on the 17th day of March, 1877, to secure their demand of $1,152.  He had actual knowledge that the original mortgages on the lands and personal property were given to secure the same debt of $715.  With this knowledge the court would not permit appellee to deal with the property to the prejudice of appellants; he could not release the property on which appellants had no lien or take new mortgages thereon to secure additional debts and thereby increase the burden of the property mortgaged to appellants.  When appellants took their mortgage the only incumbrance disclosed to them by the record was the mortgage of the 29th of January, 1877; and as between themselves and the mortgagor, they had a right in equity to have the property not included in their mortgage applied to the payment of the debt secured by the first mortgage, and this right could not be defeated by a subsequent conveyance or incumbrance of his equity of redemption to any part of the property to a person taking with full notice of appellants' rights.

It is contended that Thomas I. Sorter, who was co-surety with appellee to West, Kaiser & Co. on the notes intended to

be secured by the mortgages of December 11th, 1877, has equities in the application of the funds arising from the sale of the Blandinville lots, and the personal property superior to the equities of appellants. Whatever rights he had were derived from the acts of his co-surety, who took the mortgages with full knowledge of the previous rights of appellants. It follows from what is here said, that we are of opinion that the court erred in not crediting the first mortgage with the proceeds of the sale of the personal property, and also, in directing the balance of the last debt secured by the new mortgages to be paid out of the proceeds of the sale of the Blandinville property. For these errors the decree is reversed, and the cause remanded.

Reversed and remanded.