[No. 7189. Decided August 22, 1908.]

FRANK E. SCHAAD, *Respondent*, v. A. E. ROBINSON *et al.*,
*Appellants.*[1]

MORTGAGES—FORECLOSURE—ANSWER—PAYMENT — FRAUD. An answer states a good defense to the foreclosure of a mortgage, where it alleges that the same is paid and satisfied and that the satisfaction was being withheld and the foreclosure is being prosecuted as a fraudulent conspiracy to eliminate defendants' liens against part of the property.

SAME—PARTIAL RELEASE—EFFECT ON SUBSEQUENT LIENS. The release by a mortgagee of a portion of mortgaged premises sufficient to satisfy the mortgage debt, after notice of the liens of judgment creditors of the mortgagor upon the balance of the mortgaged property, discharges the mortgage as to all the property.

SAME—NOTICE TO MORTGAGEE—PLEADING—SUFFICIENCY. An allegation in an answer that a mortgagee had full and actual knowledge of subsequent liens upon part of the mortgaged premises at the time he released other portions of the property from the mortgage, is a sufficient allegation of notice operating to release *pro tanto* the balance of the property.

PLEADING—DEMURRER—DEFINITENESS. Want of definiteness in an answer must be taken advantage of by motion and not by demurrer.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered October 21, 1907, in favor of the plaintiff, upon sustaining demurrers to the affirmative defenses, in an action to foreclose a mortgage. Reversed.

[1]Reported in 97 Pac. 104.

*Charles E. Miller* and *Welsh, Welsh & O'Phelan,* for appellants.

*Sol. Smith,* for respondent.

HADLEY, C. J.—This action was instituted to foreclose a mortgage. The mortgage and note secured thereby were executed by the defendant Doan. The note was for $2,050, payable to the defendant Wasson. The mortgage was afterwards transferred by written assignment from Wasson to plaintiff in this action, and this suit is maintained by the assignee. The mortgage as executed covered the following real estate, to wit: Lots 1, 2, 3, and 4, of block 2, of the South Bend Land Company's first addition to the city of South Bend; also lot 1, of block 11, of Alta Vista addition to South Bend. The plaintiff in this action seeks foreclosure upon the lot last above mentioned and upon no more. In the formal allegations of the complaint, the mortgage is not described as covering any lots other than the one in Alta Vista addition. The defendants Robinson and Carstens Packing Company were made defendants because it is alleged that each claims a lien against the lot which is junior to the plaintiff's mortgage lien. The defendants Peters were made defendants as the present holders of the legal title.

In answer to the complaint, the defendants Robinson and Carstens Packing Company filed separate affirmative defenses. The substance of their extensive allegations may be epitomized as follows: That about June 20, 1906, the mortgagor Doan, while at Los Angeles, California, sold said lots 1, 2, 3, and 4, of block 2, of the land company's addition, to the defendants Peters, the sale being subject to the mortgage, and that, for the purpose of defrauding creditors, the deed evidencing the sale was, at the direction of Peters, taken in the name of Marion Cheek; that Doan, who was indebted to each of the answering defendants, absconded and left the state of Washington, and thereupon each of these defendants sued him for the amount respectively owing; that Doan was

the record owner in fee of lot 1, block 11, of Alta Vista addition, and in each action against him these defendants attached the lot and thereafter obtained judgments against the attached property, which was afterwards sold under the order of court to pay the judgments, each of these defendants becoming a purchaser for the amount of his judgment; that on the 28th day of November, 1906, the plaintiff in this action, claiming to be the owner and holder of the mortgage, for the consideration of $550 released from the lien of the mortgage the lots in the land company's addition, thereby leaving the single lot in Alta Vista addition, which was attached by these defendants, to be alone charged with the balance due upon the mortgage, to wit, $1,682.47; that thereupon the plaintiff brought this suit to foreclose the mortgage against the one lot in Alta Vista addition and not against any of the others covered by the mortgage; that the lots which were released from the mortgage are, and at all times have been, of the aggregate value of $4,000, while the remaining lot is, and at all times has been, of the value of $1,250 and no more; that at and prior to the time the plaintiff released the four lots from the lien of the mortgage, he had full and actual notice and knowledge that each of these defendants was a judgment creditor of Doan, and that he had a valid attachment and judgment against the unreleased lot; that he also knew that the combined property covered by the mortgage was ample to pay the mortgage debt and all of the indebtedness of Doan, but that the unreleased lot against which he knew the defendants had attachment judgments was not sufficient to pay even the balance due on the mortgage.

It is also alleged that, at the time the action was commenced, the plaintiff had no interest in the mortgage, but that for the purpose of cheating and defrauding the defendants and other creditors of Doan, the plaintiff and the defendant Peters conspired together and caused said release to be made; that they caused it to appear that there was a bal-

ance due on the mortgage which was a valid lien upon the unreleased lot, and in pursuance of such fraudulent conspiracy they caused this action to be commenced; whereas, in truth, the mortgage had been fully paid and satisfied; that for the purpose of effectuating the fraud, Doan and Peters caused the mortgage to be assigned to the plaintiff notwithstanding it was fully paid, and that they procured the plaintiff to release all the property covered by the mortgage except that which was attached by these defendants. The plaintiff interposed general demurrers to the above-stated defenses, and the demurrers were sustained by the court. The defendants declined to plead further, and at the trial they offered generally to make proof in support of their affirmative defenses, which was refused. Judgment was entered foreclosing the mortgage against the one lot in Alta Vista addition for the sum of $1,779.77 and costs, and barring all rights of all the defendants therein. The defendants Robinson and Carstens Packing Company have appealed.

Many errors are assigned upon the introduction of evidence and upon the findings made by the court. The extended discussion required to pass upon all of these we believe is unnecessary, in view of the result which we think must be reached on the appeal. We shall confine our discussion to the assignments that the court erred in sustaining the demurrers to the appellants' affirmative defenses and in refusing to hear testimony at the trial in support of such defenses. It appears to us that, to state the case as we have done above, is its own argument to the extent of showing that the judgment must at least be reversed. It seems manifest that it was error to sustain a general demurrer to an answer in a foreclosure case which alleged that the mortgage had been in fact fully paid and satisfied, and that the attempted foreclosure of such satisfied mortgage was being maintained as the result of a fraudulent conspiracy to eliminate other valid liens against a part of the mortgaged property. It was equally erroneous to refuse the admission of testimony in support of

such allegations. The argument is made by the respondent that the allegations are too general and in the nature of conclusions, but we think this argument is not well taken. Sufficient facts were stated to withstand a general demurrer and also to call for the admission of testimony.

Another question involved in the overruling of the demurrers and in the refusal of testimony in support of the answers is important. It is the contention of the appellants that neither the mortgagee nor his assignee could release a part of the mortgaged land and throw the whole burden upon the remaining part, in view of the fact that the holder of the mortgage knew that the remaining part had been sold for the satisfaction of valid liens which had attached subsequent to the mortgage. This contention of the appellants is well sustained by the authorities. It will be remembered that the answers in the case at bar alleged that the value of the released property has at all times been $4,000; that the sum paid upon the mortgage debt was $550, leaving a balance due thereon of $1,682.47, while the unreleased property, which was alone subject to appellants' junior liens, was worth but $1,250. Under such circumstances, the mortgagee having actual notice and knowledge of subsequent liens against a part of the mortgaged property when he released a part not affected by the junior liens, thereby releases and discharges those parcels which are subsequently liable, to the following effect and extent:

"If the value of the parcel released equals the mortgage debt, then all the subsequent parcels are wholly relieved from liability; if the value is less than the mortgage debt, the subsequent parcels can, at most, be liable in their order, only for the excess of the debt over such value." 3 Pomeroy, Equity Jurisp. (2d ed.), § 1226.

The rule is also stated as follows, in 2 Jones on Mortgages (6th ed.), § 1631:

"If the mortgagee, having notice of successive alienations of parts of the mortgaged premises, has released a part which

is primarily liable for the payment of the debt, he cannot charge the other portions of the premises with the payment of it without first deducting the value of the part released, and he must make this deduction before proceeding to sell the other portions. If that value equals the entire debt, he must bear the loss, as he cannot then resort to the first lot sold; if it is equal to a part of the debt only, he may resort to the lot sold for the deficiency."

Many decisions are cited by the above textwriters which support their epitomized statements of the rule. In *Iglehart v. Crane & Wesson*, 42 Ill. 261, the court said:

"From this rule as to the order in which mortgaged premises are to be charged, it follows as a corollary that, if the mortgagee, with actual notice of the facts, releases from the mortgage that portion of the premises primarily liable, he thereby releases *pro tanto*, the portion secondarily liable. When the mortgage is sought to be enforced against the owner of the latter, he can claim an abatement of his liability to the extent of the value of that portion which should have made the primary fund."

See, also, *Johnson v. Olcott*, 8 N. J. Eq., 561; *Blair v. Ward*, 10 N. J. Eq. 119; *Deuster v. McCamus*, 14 Wis. 333; *Guion v. Knapp*, 6 Paige Ch. 35, 29 Am. Dec. 741.

The respondent argues that the allegations as to notice are insufficient. The courts generally hold that the mere record of subsequent conveyances or liens affecting mortgaged land is not sufficient of itself to charge the prior mortgagee with notice of the existence of the equities in favor of such subsequent holders; but that the mortgagee must have actual knowledge thereof. Certainly a mortgagee who has knowledge in fact may not proceed with indifference to the rights of others to release property, and then rely upon the excuse that the subsequent holders did not give him mere formal notice of their rights. Such a rule would do violence to good conscience and would bring reproach upon a court of equity as a tribunal of conscience. The essence of this matter

of notice or knowledge on the part of a mortgagee is well stated in *Guion v. Knapp, supra,* as follows:

"The right to have the lands, which have been sold by the mortgagor, charged in the inverse order of their alienation, is not strictly a legal but an equitable right, and is governed by those equitable principles upon which this court protects the rights of sureties, or those who are standing in the situation of sureties. And the conscience of the party who holds the incumbrance is not affected, unless he is informed of the existence of the facts upon which this equitable right depends; or he has a sufficient notice of the probable existence of the right to make it his duty to inquire, for the purpose of ascertaining whether such equitable right does in fact exist."

The allegations of appellants' answers are that respondent had full and actual knowledge of the subsequent attachments and judgments and of the sales thereunder. Such is sufficiently the averment of a fact to withstand a general demurrer and to authorize the introduction of proof. Greater particularity of averment would practically amount to a pleading of the evidence, and if more specific statement were desired it could not properly have been effected by demurrer, but rather by motion if respondent was entitled to more definite statement. The sufficiency of the proof to establish actual knowledge must be determined after it has been introduced.

The judgment is therefore reversed, and the cause remanded with instructions to vacate the judgment and overrule the demurrers to the answers.

FULLERTON, MOUNT, and CROW, JJ., concur.