BROUGHTON, APPELLANT, *v.* MT. HEALTHY FLYING SERVICE, INC., ET AL., APPELLEES.*
COLERAIN & SPRINGDALE, INC., APPELLANT, *v.* BROUGHTON ET AL., APPELLEES.

(Nos. 8190 and 8195—Decided March 4, 1957.)

*Mr. Allen Brown* and *Mr. Ewing O. Cossaboom,* for appellant in cause No. 8190.

*Mr. Burney Walker,* for appellant in cause No. 8195.

*Mr. Nicholas Bauer, Mr. Robert C. Martin* and *Mr. Bryam E. Moore,* for appellees in cause No. 8190.

*Mr. Nicholas Bauer, Mr. Robert C. Martin, Mr. Bryam E. Moore* and *Mr. C. Watson Hover,* prosecuting attorney, for appellees in cause No. 8195.

MATTHEWS, J. This action was commenced by the filing of a petition for the foreclosure of a mortgage and marshaling of liens. There were seven persons named as defendants, as having, or claiming interests in the described real estate. On March 8, 1955, the plaintiff dismissed his action, without prejudice. In

*Motion to certify the record overruled, October 5, 1957.

the meantime, however, two of the defendants, Bite-D-Lite, Inc., and Colerain & Springdale, Inc., had filed cross-petitions, and the trial which resulted in the judgment in favor of the plaintiff was of the issues raised by those cross-petitions and the pleadings thereto. These appeals on questions of law and fact are by the aforesaid cross-petitioners.

The mortgage which the plaintiff sought to have foreclosed covered almost 80 acres. The owner of the fee, and the mortgagor, at the time the mortgage was executed was the defendant Mt. Healthy Flying Service, Inc. The mortgagee was Edward Hoover, as trustee, and there is no dispute that the plaintiff is the successor in title and is now the owner of the mortgage and the note which it secures. The note was for $50,000, upon which a payment of $5,000 was made. At all times material to this case, the mortgagor had been in default. The note was long overdue.

In its cross-petition against the plaintiff and the defendants Mt. Healthy Flying Service, Inc., and Colerain & Springdale, Inc., King-Bee Leasing, Inc., and Mrs. E. T. Jordan, the defendant Bite-D-Lite, Inc., alleges that on April 19, 1952, the mortgagor, Mt. Healthy Flying Service, Inc., while still the owner of the premises subject to the mortgage, leased a part of the premises covered by the mortgage to it with a privilege of purchase of a free and unencumbered title for $22,500; that it had complied with all conditions and was entitled to exercise the option, but that Mt. Healthy Flying Service, Inc., had failed and refused to convey such title to it.

Bite-D-Lite, Inc., alleges also that on May 28, 1954, the mortgagor, Mt. Healthy Flying Service, Inc., sold and conveyed the entire tract covered by the mortgage to the defendant Colerain & Springdale, Inc., and that it, Bite-D-Lite, Inc., had notified Colerain & Springdale, Inc., of its desire to exercise the option, but that it had refused to meet, convey the property, or receive the purchase price.

Bite-D-Lite, Inc., alleges also that when the plaintiff became the owner of the mortgage he had full knowledge of its lease and of its desire to exercise the option to purchase.

There are other allegations in Bite-D-Lite, Inc.'s, cross-

petition of fraud and bad faith, which we do not deem necessary to consider in reaching a conclusion in this case.

Bite-D-Lite, Inc., prays for specific performance of its privilege of purchase.

In the cross-petition of Colerain & Springdale, Inc., it questions the validity of the lease to Bite-D-Lite, Inc., and also the lease of another portion with privilege of purchase to defendant, King-Bee Leasing, Inc., and prays that the court determine the equities of the parties and instruct it as to its duty.

The record made at the trial of the issues in the Common Pleas Court has been submitted to this court. No additional evidence was introduced.

There was no issue made as to the execution of the note and mortgage sued upon or that the plaintiff was an assignee of the mortgage and note and that there is an unpaid balance on the note, which was long overdue when this action was filed. There is no dispute as to the execution of the lease to Bite-D-Lite, Inc., and the date thereof, and that it contained the privilege of purchase and that Bite-D-Lite, Inc., had performed all conditions precedent to the exercise of the privilege of purchase. It has paid the option price—$22,500—to the Clerk of Courts to abide the decree in this case.

There is no doubt that all the parties hereto had prior knowledge of the interests of the various parties in the premises and the dates of their acquisition.

After the execution of the lease to Bite-D-Lite, Inc., the owner of the fee leased a portion of the premises to King-Bee Leasing, Inc., and gave a second mortgage on the residue of the premises, not embraced in the leases, to Mrs. E. T. Jordan, and, thereafter, that is on August 1, 1955, the plaintiff released the portion of the premises embraced within the Jordan mortgage from the lien of his mortgage.

The portion of the premises leased to Bite-D-Lite, Inc., has never been released from the operation of the mortgage and remains in full vigor except to the extent that it has been affected by the dealings of the mortgagor and mortgagee in relation to the residue of the mortgaged premises.

It will be observed that after the mortgagor leased a portion of the premises to Bite-D-Lite, Inc., it leased another por-

tion to King-Bee Leasing, Inc., and then gave a second mortgage on the part not leased; and that the mortgagee then released that portion from the operation of his lien. The problem we are called upon to solve arises out of these dealings by the mortgagor and mortgagee after the execution of the mortgage sued upon. What effect, if any, do the acts of a mortgagor in conveying away parts of mortgaged premises to different grantees have upon the rights of a prior grantee of another part of those premises? And, what effect, if any, does the act of the mortgagee in releasing the residue of the premises from the operation of the mortgage have upon the rights of a prior grantee of another portion of the mortgaged premises? Is the grantee of a portion ·of mortgaged premises entitled to have maintained the *status quo* at the time he acquired his partial interest, so that each portion will bear its share of the common burden?

It is manifest that this situation calls, in almost equal measure, for the application of the closely related equitable doctrines of contribution and indemnity. 11 Ohio Jurisprudence (2d), 563, Section 2. Where two or more persons or their property are charged with a burden and between them, one or more should, in justice and equity, ultimately relieve one or more or their property from the whole or a part of the burden, equity supplies a remedy to require the burden to be discharged by the primary obligor, or if the secondary obligor has already discharged the burden, to require reimbursement.

In this case, the mortgagor, Mt. Healthy Flying Service, Inc., is primary obligor, bound by the plaintiff's note and mortgage, and every portion of the real estate embraced within the mortgage was equally burdened with the debt. No part could be relieved of the burden without the consent of the mortgagee. When the mortgagor leased a part of the mortgaged premises to Bite-D-Lite, Inc., and, later, another part to King-Bee Leasing, Inc., those transfers had no effect whatever upon the right of the mortgagee to have the entire premises, including the portions leased, subjected to the payment of the mortgage debt. It did create a situation where adjustment might be necessary in order to protect both the mortgagee and the lessees in their respective rights. Equity early conceived the idea that justice

required that the mortgagee should enforce his mortgage, so as to have recourse to the part leased or conveyed, only in the event the residue was insufficient to discharge the mortgage debt.

That this principle has received wide application to cover all situations created by either mortgagor or mortgagee, or both, is made manifest by the text book statements of the doctrine.

In 59 Corpus Juris Secundum, 662, Section 434 (4), the doctrine is epitomized in bold-faced type as applied, where the mortgagee has released a part of the mortgaged premises, as follows:

"Generally, where the mortgagee, with notice of prior alienations by the mortgagor of parts of the premises, releases that part of the mortgaged property which is primarily liable for the debt, the release operates as a discharge or release of the parts secondarily liable to the extent of the value of the part released."

And, at page 663, the rule is applied to a situation created by the transfer of the mortgagor of a part of the mortgaged premises after the execution of the mortgage. It is stated that:

"A subsequent mortgage is an 'alienation' within the rule requiring sale of the mortgagor's several interests in the inverse order of alienation; and the rule may apply as between the grantee of part, and the mortgagee of part, of the mortgaged premises, or as between successive mortgagees of different portions of the land."

In 35 American Jurisprudence, 425, 426, Section 58, we find this statement:

"The paramount encumbrancer who has notice of the equity, under the doctrine under consideration, of the first purchaser or encumbrancer of a parcel of land covered by his encumbrance, cannot, after having released the parcel retained by the owner or a parcel subsequently alienated by him, enforce the entire debt secured by the encumbrance against the parcel previously alienated or encumbered. Having notice of such equity, he is under duty not to act so as to prejudice it; and if with such notice, he releases the parcel retained or the parcel subsequently alienated, the liability of the parcel first alienated or

encumbered is to be reduced by the value of the parcel released. If the part released was sufficient to satisfy the entire debt, the paramount encumbrancer cannot resort to the parcel previously alienated or encumbered, and that parcel is thereby fully discharged of the encumbrance; and if the value of the parcel released appears to have been less than the amount of the debt, the parcel first alienated or encumbered is answerable only for the difference.''

That the law of Ohio is in accord with the general rule is clear. In 27 Ohio Jurisprudence, 451, Section 221, it is said:

'' * * * The doctrine that land subject to a lien, parts of which have subsequently been sold, or subjected to another lien, must be applied to the prior lien in the inverse order of alienation also finds application in the law of mortgages. As between successive purchasers in fee, and for full value, of separate parcels of land, encumbered by a prior mortgage on the whole, a sale of the same to satisfy the mortgage will be made in the inverse order of alienation. * * *''

The cases cited in the annotation fully support the text. Probably the case of *Parkman* v. *Welch*, 19 Pick. (36 Mass.), 231, is as clearly illustrative as is any other case of the application of the principle. We quote the fourth paragraph of the syllabus:

''If a mortgage be made of two parcels of land as security for the payment of a sum of money, and the right in equity to redeem one parcel be transferred to A. and the right to redeem the other to B., and the mortgagee afterwards release A.'s parcel from the mortgage, B., on redeeming, cannot compel A. to contribute, but he is entitled to have an abatement of such a proportion of the sum due on the mortgage as the value of A.'s parcel bore, at the time of the execution of the mortgage, to the value of both parcels.''

At page 239 the court said:

'' * * * The application of the legal principle before stated will require us to rule, that the operation of the release of lot No. 44 be, to abate so much from the sum that would otherwise be due on this mortgage, as the proportional value of lot No. 44

at the time of the execution of the mortgage, was to the value of all the lands included in the mortgage.

"We shall direct a reference to a master to ascertain the value of the several lots 42, 44 and 46, at the date of the mortgage, that there may be abated from the amount due on the mortgage the sum that would have been ratably chargeable on lot No. 44. * * *"

See, also, *Schaad* v. *Robinson*, 50 Wash., 283, 97 P., 104.

From what has been said it is clear that it is our opinion that neither the mortgagee nor mortgagor, acting separately or together, after change of ownership of either the mortgage or the fee, in whole or in part, could relieve any part from the lien of the mortgage so long as any part remains unpaid, and leave any part of the premises subject to the lien.

We think it is equally clear upon principle, and in accordance with the decided cases, that the mortgagor could not, without the consent of the owner of the mortgage at the time, limit the right of such owner to subject the portions of the premises leased, to the mortgage lien to the full extent of their value, notwithstanding the options to purchase contained in the leases.

Our conclusion is that whatever balance remains due upon the plaintiff's mortgage should be satisfied in the inverse order of the conveyances or leases, and, if the part conveyed last is insufficient to pay such balance and it becomes necessary to resort to parcels embraced within the leases, effect should be given to the options to purchase, provided that can be done without detriment to the rights of the mortgagee to have the whole value of the leased premises subjected to the payment of its debt. However, we are under the impression that it will be undisputed that the option prices equal or exceed the value at the time the leases were executed and would discharge their portion of the original common and equal burden. If this is not true, additional evidence on the subject may be introduced.

The defendant Colerain & Springdale, Inc., by its cross-petition seeks to prove the leases to Bite-D-Lite, Inc., and King-Bee Leasing, Inc., declared void and set aside on the ground of fraud and a lack of a meeting of minds. The cross-petition was

traversed by the lessees, and we find no evidence to support the cross-petition.

A decree will be presented in accordance with this opinion, and the cause remanded to the Common Pleas Court for execution.

*Decree accordingly.*

HILDEBRANT, P. J., and LONG, J., concur.